# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANTHONY CURRY,**

    **Petitioner-Defendant,**

v.                                           **Civil Action No.** 3:15-cv-66
                                                     **Criminal Action No.** 3:02-cr-35-1

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On June 1, 2015, Anthony Curry ("Petitioner"), proceeding *pro se*, filed a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255. (Civil Action No. 3:15-cv-66, Docket No. 1; Criminal Action No. 3:02-cr-35-1, Docket No. 951). On that same date, Petitioner was sent a Notice of Deficient Pleading instructing him to file his motion on the correct forms. (Docket No. 954 at 1).[1] Petitioner filed a court approved form on June 22, 2015. (Docket No. 956). The undersigned did not order Respondent to answer Petitioner's motion.

### II. FACTS

**A.**     **Conviction and Sentence**

On July 9, 2002, a Grand Jury in the Northern District of West Virginia returned an Indictment charging Petitioner individually with thirteen (13) counts of a twenty nine (29) count indictment. (Docket No. 1). On December 2, 2002, Petitioner appeared before United States District Judge W. Craig Broadwater to enter a plea of guilty pursuant to a written plea agreement. (Docket No. 333). In that plea agreement, Petitioner agreed to plead guilty to Count Nineteen (19) of the

---

[1] From this point forward, unless noted otherwise, all docket entries refer to filings in Criminal Action No. 3:02-cr-35-1.

Indictment (Docket No. 333 at 1). Count Nineteen (19) charged Petitioner with "distribution of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)( C )." (Id.). On June 7, 2004, Judge Broadwater sentenced Petitioner to three hundred sixty (360) months imprisonment followed by six (6) years of supervised release. (Docket No. 552). Additionally, Judge Broadwater stipulated that Petitioner "shall participate in a program of testing, counseling, and treatment for the use of alcohol or drugs if so ordered by the probation officer" and "refrain from the use of alcohol." (Docket No. 552 at 4).

**B.     Direct Appeal**

Petitioner subsequently filed a Notice of Appeal on June 16, 2004. (Docket No. 553). In his appeal, Petitioner "challenge[d] the district court's denial of his motion to withdraw his guilty plea." United States v. Curry, 165 F. App'x 277 (4th Cir. 2006). Additionally, Petitioner "assert[ed] that the district court did not allow him to challenge relevant conduct at sentencing, and he attemt[ed] to raise claims under Blakely v. Washington, 542 U.S. 296 (2004).[2]" (Id.). Ultimately, the Fourth Circuit Court of Appeals affirmed Petitioner's conviction and sentence and dismissed his appeal on February 7, 2006. (Id.). The Court of Appeals reasoned that Petitioner waived his right to challenge his sentence when he signed his plea agreement. (Id.). The Petitioner proceeded with a petition to the Supreme Court of the United States on writ of certiorari. The writ was denied on June 12, 2006. See Curry v. United States, 547 U.S. 1199 (2006).

**C.     Federal Habeas Corpus Motion**

---

[2] In Blakely, the Supreme Court held that state trial court's sentencing of a defendant to more than three years above the fifty-three (53) month statutory maximum of the standard range for his offense, on basis of sentencing judge's finding that defendant acted with deliberate cruelty, violated a defendant's Sixth Amendment right to trial by jury.

2

*1. Petitioner's § 2255*

Petitioner provides three (3) grounds in his § 2255 petition:

(1) "Whether the plea/contract is void and/or null because the assis [sic] United States Attorney created a conflict of interest between defense counsel and the Petitioner." (Docket No. 956 at 5).

(2) "Whether the plea agreement/contract is void and/or null because the AUSA[3] comitted [sic] fraud for failing to fully explain that by the Petitioner waiving his rights to appeal it could create a conflict of interest between Petitioner and defense counsel." (Docket No. 956 at 6).

(3) "Whether defense counsel was ineffective for allowing petition [sic] to sign such a waiver, that he knew, would create a conflict of interest, and for allowing petitioner to stipulate to 40 thousand grams of relevant conduct." (Docket No. 956 at 8).

Regarding the timeliness of his motion, Petitioner states that "pursuant to the one-year statute of limitations as contained in 28 U.S.C. 2255. . . he wasn't aware of such a conflict of interest in his case until after October 14, 2014, when Attorney General Eric Holder directed all federal prosectors [sic] not to enforce collateral attack waivers in plea agreements/contract." (Docket No. 956 at 19). Therefore, Petitioner claims to have grounds pursuant to 28 U.S.C. 2255 (f)(4). (Id.). As for relief, Petitioner requests that the undersigned "vacate and remand for a new negotiation of a 'conflict free' plea agreement." (Docket No. 956 at 18).

### III. ANALYSIS

A one-year statute of limitations applies to all petitions brought under § 2255. Under 28 U.S.C. § 2255(f), the limitations period has four possible starting dates. The limitations period begins

---

[3] Petitioner substitutes AUSA for "Assistant United States Attorney."

3

from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2255(f)(1)-(4).

The undersigned recognizes that pursuant to United States v. Sosa, 364 F.3d 507 (4th Cir. 2004) and Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) notice must be given to a petitioner that the Court intends to dismiss the motion as being untimely unless the petitioner can demonstrate that the motion is timely. However, "Hill leaves open the possibility that district courts could dispense with notice if it is 'indisputably clear' that the motion is untimely and cannot be salvaged through tolling." Sosa, 364 F.3d at 511. Here, the grounds Petitioner raises in support of his motion to vacate are clearly not newly-discovered issues. Consequently, the undersigned has proceeded to consider whether the motion is timely without providing Petitioner further opportunity to explain the timeliness of his petition.

Regarding subsection one of §2255(f), a judgment becomes final: (1) when the opportunity to appeal the district court's judgment expires; (2) "when the time expires for filing a petition for

certiorari contesting the appellate court's affirmation of the conviction;" or (3) **when the United States Supreme Court denies certiorari**. United States v. Clay, 537 U.S. 522, 524-25, 32 (2003) (emphasis added). Here, Petitioner's writ of certiorari was denied on June 12, 2006. Accordingly, Petitioner had one year from that date, or until June 12, 2007 to file his § 2255. Consequently, Petitioner filed his motion **seven (7) years, eleven (11) months, and twenty-one (21) days** after the statute of limitations under § 2255(f)(1) expired. Thus, Petitioner cannot rely on subsection § 2255(f)(1) to render his motion timely filed.

Petitioner does not allege that the Government created an impediment to his ability to timely file a § 2255 motion. Furthermore, Petitioner does not raise a claim regarding a newly recognized right that has been made retroactively applicable to cases on collateral review. Thus, §§ 2255(f)(2)-(3) do not apply.

Instead, Petitioner invokes § 2255(f)(4) by stating Attorney General Eric Holder's memorandum to United States Attorneys on October 14, 2014 is new evidence. (Docket No. 956 at 19). In his original motion, Petitioner first analogizes his plea agreement to a contract based on the holding in Santobello v. New York, 404 U.S. 257 (1971). In Santobello, a petitioner withdrew his not-guilty plea to two (2) felony counts and instead pleaded guilty to a lesser-included offense because the prosecutor agreed to make no recommendation as to the sentence. Santobello, 404 U.S. at 257. After multiple delays, the petitioner acquired a new defense counsel before his sentencing. Santobello, 404 U.S. at 258. Additionally, another prosecutor replaced the prosecutor who had originally negotiated the petitioner's plea. Santobello, 404 U.S. at 259. The new prosecutor recommended the maximum one year sentence and cited the petitioner's criminal record. Id. The judge imposed the maximum one year sentence, and the petitioner appealed. Santobello, 404 U.S.

at 260. The Supreme Court, Appellate Division affirmed and the petitioner petitioned for certiorari. Id. The United States Supreme Court concluded that "where the 'plea bargain' is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the remedy. . . ." Santobello, 404 U.S. at 267.

Here, Santobello is not analogous to Petitioner's case. First, Petitioner does not claim that the Prosecutor changed during the course of his plea bargain. Second, Petitioner does not claim that he acquired a new defense counsel. Additionally, Petitioner does not argue that his plea agreement was not kept. Petitioner uses Santobello to support his claim that his plea bargain is a "contract." (Docket No. 951 at 3; Docket No. 956 at 15). However, the facts in Santobello are not analogous to Petitioner's plea bargain. Petitioner provides no evidence that there was a conflict of interest which would effect his plea bargain. Thus, Santobello provides Petitioner with no relief.

Additionally, Petitioner cites Godley v. United States, 5 F.3d 1473 (Fed. Cir. 1993). Petitioner argues that "because the government knows [his plea agreement is tainted by fraud] but fails to say anything, it is fraud because a defendant such as Mr. Curry has an 'underlying right' to be correctly informed of the facts." (Docket No. 951 at 3). In Godley, the plaintiff sued the United States Postal Service in the United States Court of Federal Claims for breach of contract. The plaintiff offered to build a postal service facility on his land and provide a ten-year lease with an option to buy after the first year. Godley 5 F.3d at 1474. The Postal Service agreed. Id. However, the Postal Service agent responsible for making that deal was indicted for conspiracy and bribery. Id. Thus, the Postal Service claimed that the contract was not valid "because it was tainted by Mr. Paramore's illegal conduct" therefore making it "void *ab initio*." Id. The Court of Federal Claims

6

concluded "the Government had forfeited its right to avoid Mr. Godley's contract by 'failing to exercise that right in a timely manner.'" Id. However, the United States Court of Appeals for the Federal Circuit ("Court of Appeals") found that the "trial court erred in determining on summary judgment that Mr. Godley's contract was voidable, rather than void *ab initio*." Godley 5 F.3d at 1476. Ultimately, the Court of Appeals remanded the case "for a determination whether Mr. Godley's contract was void *ab initio* or voidable" and vacated the decision of the Court of Federal Claims, remanding "for determination of material issues of disputed fact." Id.

Here, Petitioner cannot rely on Godley for relief. First, the facts in Godley are in no way similar to the facts in Petitioner's instant motion. Petitioner's plea bargain was not void when it was signed, and is currently not void. Although Petitioner makes a brief argument that his plea agreement is a contract, he does not provide support to prove any fraud. Petitioner claims that "the government, as a party in the contract, has the obligation to say the waiver [in the plea bargain] could cause a conflict of interest." (Docket No. 951 at 3). Additionally, Petitioner states that "fraud occurs when a party in an argument has a duty to speak but 'fails to disclose the truth.'" Id. Therefore, Petitioner is claiming the general waiver of collateral attack located in paragraph 10 of his plea agreement is the source of the fraud, and that this fraud thus voids the plea agreement. This is false because Petitioner's plea agreement was signed on December 2, 2002. (Docket No. 333). The memorandum to which Petitioner claims causes a conflict of interest was not released until October 14, 2014. Twelve (12) years separate the two documents. Thus, no conflict of interest existed in 2002 between the defense counsel and Petitioner, and no conflict exists now. Subsequently, no fraud has occurred. Petitioner's plea agreement is valid.

Regarding ineffective assistance of counsel, Petitioner cites Cuyler v. Sullivan, 446 U.S. 335

7

(1980). In Cuyler, "two privately retained lawyers represented [the] respondent and two others charged with the same murders." Cuyler 446 U.S. at 335. The respondent was convicted but the two co-defendants were acquitted at separate trials. Id. The respondents sought collateral relief for ineffective assistance of counsel "because his lawyers represented conflicting interests." Id. The Pennsylvania Court of Common pleas denied relief and the Pennsylvania Supreme Court affirmed. Id. The Court of Appeals for the Third Circuit reversed and held "the participation of the two lawyers in all three trials established as a matter of law that both lawyers represented all three defendants, and that the possibility of conflict among the interests represented by these lawyers established a violation of respondent's Sixth Amendment right to counsel." Id.

In this case, Petitioner is not factually analogous to Cuyler. First, Petitioner has not been tried for murder. Second, Petitioner does not claim that his counsel represented any co-defendants charged with the same crime. Petitioner only argues, again, that he is owed a "duty to avoid conflicts of interest." (Docket No. 951 at 3; Docket No. 956 at 15, 17). However, Petitioner fails to show any conflict of interest because he does not provide any evidence of such. Pursuant to Cuyler, "a defendant must show that an actual conflict of interest adversely affected his lawyer's performance." Cuyler 446 U.S. at 337. See McNeil v. United States, No. 2015 WL 3505559 (M.D. NC 2015) (quoting that "[a]s [Petitioner] has not provided any evidence of an adverse interest [of counsel], he has failed to establish the existence of a conflict [of interest]" (citing Blevins v. White, No. 2014 WL 7004976, at *24 (E.D. Ky. 2014) (internal citation omitted)). More than a mere possibility of conflict of interest must be shown to establish ineffective representation. United States v. Tatum, 943 F.2d 370 (4th Cir. 1991). Thus, Cuyler provides Petitioner with no relief.

Pursuant to United States v. Martinez, 136 F.3d 972, 979-80 (4th Cir. 1998), cert. denied 524

8

U.S. 960 (1998), a defendant may raise a claim of ineffective assistance of counsel: "(1) in a motion for a new trial based on anything other than newly discovered evidence; (2) on direct appeal if an only if it conclusively appears from the record that his counsel did not provide effective assistance; and (3) by a collateral challenge pursuant to 28 U.S.C § 2255." Additionally, in United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005), the court found that if a waiver of collateral-attack rights was knowing and voluntary, defendant could not challenge his or her conviction or sentence in a § 2255 motion. However, ineffective assistance in the context of a guilty plea may be addressed even when matters involved would be waived under the plea. See Lemaster, 403 F.3d at 221-22.

Paragraph ten (10) of Petitioner's plea agreement contained a general waiver of collateral attack rights stating in relevant part:

> "Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction... The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus)."

(Docket No. 333 at 3-4). Here, under Lemaster, Petitioner could have filed a § 2255 petition containing a claim for ineffective assistance of counsel well before Attorney General Eric Holder issued his October 14, 2014 memorandum. Petitioner certainly could have filed a § 2255 motion prior to June 7, 2007 (the end of his one year statute of limitations period). Therefore, the general waiver Petitioner signed did not bar him from timely raising an ineffective assistance of counsel claim in a § 2255 motion.

The October 14, 2014 memorandum from Attorney General Holder did not establish new law.

9

Rather, the memorandum restated what has already been held in case law. The memorandum merely caused Department of Justice policy to mirror the law established by the Fourth Circuit and other federal courts. The memorandum did not establish new facts or new rights. Petitioner has not alleged any new facts that would allow him to benefit from § 2255(f)(4). Consequently, Petitioner's statute of limitations expired on June 7, 2007 and his § 2255 motion is untimely by **seven (7) years, eleven (11) months, and twenty-one (21) days**.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:15-cv-66, Docket No. 1; Criminal Action No. 3:02-cr-35-1, Docket No. 951) be **DENIED** and **DISMISSED WITH PREJUDICE** as untimely filed.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court

further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Anthony Curry by certified mail, return receipt requested, to his current address as reflected on the docket sheet.

DATED: June 25, 2015

*/s/ John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE